# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JOSHUA NORFLEET,

        Petitioner,    :    Case No. 2:18-cv-834

  - vs -                            District Judge James L. Graham
                                          Magistrate Judge Michael R. Merz

RICHARD BOWEN. Warden,
  Ohio State Penitentiary.

                                        :

        Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Joshua Norfleet to obtain relief from his convictions in the Common Pleas Court of Coshocton County and subsequent imprisonment. The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 12), and the Return of Writ (ECF No. 13). Petitioner has not filed a Reply and the time for him to do so, set by Magistrate Judge Vascura in ordering an answer, expired January 2, 2019 (See Order, ECF No. 7).

**Litigation History**

Norfleet was indicted on February 29, 2016, on a number of felony counts arising from a home invasion with two others on February 3, 2016. He was convicted by a trial jury of aggravated burglary, burglary, kidnapping carrying a concealed weapon, having a weapon while under a disability, tampering with evidence, and improperly discharging a firearm in a residence. He was

1

sentenced to an aggregate term of imprisonment of over thirty-five years. Still represented by his trial counsel, he appealed to the Ohio Fifth District Court of Appeals which affirmed the convictions. *State v. Norfleet*, 2016-Ohio-8236 (Ohio App. 5th Dist. Dec. 15, 2016), appellate jurisdiction declined, 149 Ohio St. 3d 1420 (2017). In March 2017, Norfleet filed an Application to Reopen his direct appeal, pursuant to Ohio R. App. 26(B). The Fifth District denied that Application. After Norfleet failed to timely appeal to the Ohio Supreme Court, his motion for delayed appeal was denied. *State v. Norfleet*, Case No. 2017-1748 (copy at State Court Record, ECF No. 12, PageID 233). Norfleet filed his Petition for Writ of Habeas in the Northern District of Ohio on May 21, 2018 (ECF No. 1). That court transferred the case to this District on August 10, 2018, finding that this is the federal judicial district in which the conviction occurred (ECF No. 5). The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the workload in this District.

Norfleet pleads the following grounds for relief:

> **Ground One:** Aggravated burglary and kidnapping – the evidence was not sufficient for a guilty verdict.
>
> **Ground Two:** Kidnapping Brittany Harris and Samantha Crenshaw – the evidence was not sufficient for a guilty verdict.
>
> **Ground Three:** Whether Appellant remained on premises when told to leave.
>
> **Ground Four:** Consecutive sentences – State failed to sentence appellant to allied offense on burglary and kidnapping.
>
> **Ground Five:** Ineffective assistance of counsel.

(Petition, ECF No. 1.)

# Analysis

**Grounds One, Two, and Three: Insufficiency of the Evidence**

In his First Ground for Relief, Norfleet claims there was insufficient evidence presented to the jury to support his convictions for aggravated burglary and kidnapping. He claims his actions did not become burglary until he was told to leave by Linda Murray, and that the jury later acquitted him of kidnapping her. In his Second Ground for Relief, he asserts there was similarly insufficient evidence that he kidnapped Brittany Harris and Samantha Crenshaw. In his Third Ground for Relief, he claims he was in the residence for less than two minutes which is insufficient to constitute the trespass needed for a burglary conviction.

These claims, in the form of claims that the convictions were against the manifest weight of the evidence, were presented to the Fifth District on direct appeal and decided as follows:

> [*P3] . . . At the trial, Brittany Harris testified that on February 3, 2016, she was staying with Linda Murray at Murray's house. Harris testified that she had been staying at the house for about a month and that although she had used drugs while at Murray's house, she was not using or under the influence of drugs on February 3, 2016. Harris further testified that Samantha Crenshaw and Carrie Sickles were at Murray's house on such date.
>
> **[*P4]** Harris testified that she was in her bedroom, Murray and Sickles were in Murray's bedroom and Crenshaw was sleeping in front of the living room door on an air mattress. According to Harris, she was woken up by someone beating on the door. After no one closer to the door answered it, Harris got up and asked who was there. After a person responded "Josh", Harris, thinking that it was Josh Edie who lived in the house, unlocked and opened the door about three inches. Transcript at 176. Outside, Harris saw three African-American men. One of the men was appellant and the other two were his brothers. Harris testified that she asked the men who they were there for and that they did not respond. When she went to close the door, the three men pushed their way into the house. Harris

noticed that the first one in, who was appellant, had a gun in his pants.

[*P5] When asked what happened after the men pushed the door open, Harris testified that appellant "put the gun to my chest and told me to sit the fuck down on the couch." Transcript at 178. Harris testified that appellant and his brothers had lived across the street from her growing up and that appellant was wearing a white t-shirt and white bandanna. According to Harris, the men began asking "Where's he at? Where's that nigga at? We know he is in here somewhere." Transcript at 179. She testified that she did not know who they were talking about and that appellant's brother, Willie, was yelling at Samantha Crenshaw. At the time, Willie had a dark object in his waistband.

[*P6] Harris testified that Linda Murray came out of her room and told the men to leave. Appellant continued searching while brandishing a gun and went into Murray's bedroom. Harris testified that after appellant exited the bedroom, he went over to Samantha Crenshaw, knelt down and put the gun down by her head while Crenshaw was on the air mattress under a blanket. Crenshaw, according to Harris, tried to cover her face with the blanket and rolled towards the wall so that she was not facing appellant. After appellant shot the gun near Crenshaw's head, the men ran out of the house.

[*P7] On cross-examination, Harris admitted that she knew that drugs were being sold out of Murray's house and that people were coming to the house to buy drugs. She testified that crack and cocaine were being sold and that she had used both of the substances before while living at the house. Harris testified that she used drugs two or three times a week and that the other women living in the house also used drugs.

[*P8] The next witness to testify was Linda Murray. Murry testified that she had used crack cocaine for a long time but was not using drugs or under the influence of drugs on February 3, 2016. When asked, she testified that she did not sell drugs out of her house and that she had known appellant and his brothers for approximately 20 years. Murray testified that she did not hear knocking on the door but then heard a commotion in her front room. She testified that she told the men to "get the F out of my house" but that they did not leave. Transcript at 212. According to Murray, appellant "kept saying 'Where's her at? Where's he at." Transcript at 212-213. When she asked appellant who he was talking about, appellant indicated "Josh." She then told appellant that Josh was not there. Murray

testified that she did not know who appellant was talking about, but that a man named Josh Edie comes to her house. She testified that appellant was wearing a white t-shirt, white bandanna and a jacket.

**[\*P9]** Murray also testified that all three men had guns and that while appellant's gun was in his hand, she was unsure where the other two had their guns. When asked what happened after appellant left her bedroom, she testified that she heard a shot. Murray, when asked why she did not call 911 when appellant first came into her bedroom, testified that she was scared. Murray testified that she did not want to go into the front room because she did not know if Samantha Crenshaw was dead or not. She testified that she heard the three men making comments directed towards Crenshaw about her robbing them. After the men left and Murray came out of her bedroom, she found a hole in the air mattress and the floor and a bullet casing. Murray called 911. She testified that she did not feel free to leave her house when the three men came in with guns and thought that if she did not cooperate, they might shoot everyone.

**[\*P10]** On cross-examination, Murray testified that she used crack cocaine two or three times a month, but was not still using crack cocaine. While she admitted that drugs were sold out of her house, she testified that Josh Edie sold the drugs, not her. When asked why Samantha Crenshaw was sleeping the whole day on February 3, 2016, Murray testified that Crenshaw was "coming off of heroin." Transcript at 232. She stated that she did not hear appellant knocking on the door and did not know if he knocked or whether Harris let him in. Murray agreed that she had a criminal record for trafficking in drugs.

**[\*P11]** At trial, Samantha Crenshaw testified that she had a history of drug use and had used meth and weed. She testified that she was using drugs when staying with Murray and had been using drugs since she was 16 years old. Crenshaw denied using drugs or being under the influence of drugs on February 3, 2016. When asked why she slept all day on February 3, 2016, Crenshaw testified that it was normal for her to do so when she did not have drugs. When asked about the first thing that she remembered, Crenshaw testified that she woke up to the three men coming in and asking where "he" was at. According to Crenshaw, appellant knelt down in front other [sic], pulled out his gun, said "this is gangsta", and shot the gun while she was on the air mattress along the wall by the front door. Transcript at 252. She testified appellant ripped off the blanket that was over her head before the gun went off.

**[\*P12]** Crenshaw further testified that Harris was sitting on the couch when the men first came into the house and that they told Harris to sit down. The men kept asking where "he" was at. Crenshaw testified that she was not injured, that she did not hear anyone invite the men into the house, and that she had never seen them at Murray's house prior to the date in question.

**[\*P13]** On cross-examination, Crenshaw testified that she used drugs four days of the week and that she did not hear anyone knock on the door. She further testified that she did not see Harris open the door. While no one told her that she could not leave the house, Crenshaw, when asked if she was restrained in any way, testified that the three men had guns.

**[\*P14]** After Crenshaw testified, appellee moved for a nolle prosequi concerning counts [sic] 9 (improperly discharging a firearm at or into a habitation) which was granted.

**[\*P15]** Carrie Goff (aka Sickles) next testified that Murray was her aunt and that she was staying at Murray's on the night of February 3, 2016. She admitted using cocaine and crack, but denied either using drugs or being under the influence of drugs on February 2, 2016 and February 3, 2016. Goff, on cross-examination, testified that she did not hear anyone else knock on the door that night other than Missy Wright, who had stopped in that evening.

**[\*P16]** Detective Garrison Bryant, during the ensuing investigation, reviewed a video of Murray's house taken by a neighbor across the street. The Detective had received information that appellant was wearing a white bandanna and white T-shirt. The video showed a man wearing a white bandanna and a white shirt under a jacket. The Detective found a .40 caliber shell casing in the living area of Murray's residence and a bullet hole in the pillow that was on top of the air mattress that Samantha Crenshaw was positioned on during the incident. The pillow contained gunshot residue. The air mattress also contained a bullet hole. In the basement area of the house, under the area where Crenshaw was sleeping, Detective Bryant located a bullet hole in the ceiling and located a copper jacket of a bullet.

**[\*P17]** After appellant was apprehended, a bullet was found in the vehicle that the three men had been driving that matched the kind and caliber of the shell casing found in Murray's residence. However, the weapon that was discharged at Murray's house was never located. The clothing that appellant was wearing at the time of his apprehension matched the descriptions that were given by the

eyewitnesses. Gunshot reside was located on the left cuff of appellant's coat.

**[\*P18]** At trial, appellant testified in his own defense. Appellant admitted that he had a criminal record and had been convicted of carrying a concealed weapon and involuntary manslaughter. He had been in prison for ten years. When asked why he went with his two brothers to Murray's house, appellant testified that his oldest brother needed to stop there for an unknown reason. Appellant testified that he knew Murray and had been to her house before and that someone opened the door after he knocked. Appellant denied forcing his way into the house or having a gun on him that night.

**[\*P19]** At the conclusion of the evidence and the end of deliberations, the jury, on April 13, 2016, found appellant guilty of aggravated burglary with a firearm specification, of kidnapping both Brittany Harris and Samantha Crenshaw, of carrying a concealed weapon, of having weapons while under disability and of tampering with evidence. The jury found appellant not guilty of the other two of the counts of kidnapping.

* * *

**[\*P24]** Appellant, in his first assignment of error, argues that his convictions for aggravated burglary, kidnapping, carrying a concealed weapon, having a weapon while under disability, and tampering with evidence are against the manifest weight of the evidence.

**[\*P25]** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.* We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."

*Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

**[\*P26]** 'While the jury may take note of the inconsistencies and resolve or discount them accordingly \* \* \* such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' *State v. Naugle*, 5th District Stark No.2008-CA-00190,[ 182 Ohio App. 3d 593,] 2009-Ohio-3268[, 913 N.E.2d 1052] citing *State v. Craig*, 10th Dist. No. 99AP-739[, 2000 Ohio App. LEXIS 1138, ]2000 WL 297252 (Mar. 23, 2000), quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236,[ 1996 Ohio App. LEXIS 2245,] 1996 WL 284714 (May 28, 1996), 3 [sic].

**[\*P27]** Appellant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(2). Such section states as follows:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:...
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

**[\*P28]** Appellant specifically argues that his conviction for aggravated burglary is against the manifest weight of the evidence because an individual who was going to break into a residence would not knock on the front door, because no one other than Brittany Harris, who was furthest from the front door, heard the knocking on the front door, because he did not enter the residence to commit a criminal offense, and because the four witnesses, all drug users, were not credible.

**[\*P29]** As is stated above, Brittany Harris testified that appellant forced his way into the house and that he had a gun on his person at the time. Testimony was adduced that, while in the house, appellant restrained and terrorized both Harris and Samantha Crenshaw and fired a gun at Crenshaw's head. While appellant argues that the women who testified were drug users who were not credible, the juror [sic], as trier of fact, was in the best position to assess their credibility.

> **[\*P30]** Appellant also argues that his conviction for kidnapping Brittany Harris and Samantha Crenshaw was against the manifest weight of the evidence. Appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(3):
>
> **[\*P31]** "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> **[\*P32]** "(3) To terrorize, or to inflict serious physical harm on the victim or another[.]"
>
> . . .
>
> **[\*P34]** Appellant initially contends that Harris could not claim to have been kidnapped when she was free to leave since the front door was open, but did not do so. However, Harris testified that she was concerned that the other three women would have been shot if she left to get help, that appellant, who had a gun, told her to sit down on the couch, and that she was worried that she would be shot if she did not listen. Thus, there was testimony that appellant, by force or threat, restrained Harris' liberty with purpose to terrorize her. Appellant also argues that Samantha Crenshaw could not have been kidnapped since she was asleep throughout the experience and testified that she did not see anyone restrained. However, Crenshaw testified that appellant knelt beside her and put a gun to her head. While she was never told that she could not leave, she testified, when asked if she was restrained in any fashion, that all of the men had guns. We find that appellant's convictions for kidnapping were not against the manifest weight of the evidence. There was evidence, if believed, that appellant restrained the liberty of both women to terrorize them.

*State v. Norfleet*, 2016-Ohio-8236.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order

for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, No. 3:03-po-002, 2007 U.S. Dist. LEXIS 76699 at *1 (S.D. Ohio Oct. 12, 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

A state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. App'x 761, 762, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceedings.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, "deference should be given to the trier-of-fact's verdict" under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(*en banc*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial

> deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, 2, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. [766, 773], 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(*per curiam*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*).

The Fifth District's thorough and careful review of the testimony at trial shows that its decision on the weight of the evidence claims is neither contrary to nor an objectively unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). Therefore, Petitioner's first three grounds for relief should be dismissed.

**Ground Four: Improper Consecutive Sentencing for Burglary and Kidnapping**

In his Fourth Ground for Relief, Norfleet claims he was improperly sentenced to consecutive terms for burglary and kidnapping and that they should have been merged as allied offenses of similar import under Ohio Revised Code § 2941.25.

Norfleet presented the consecutive sentences argument as his second assignment of error on direct appeal, but nothing in the Fifth District's decision adverts to any claim that these offenses are allied offenses of similar import.

With respect to both claims, they arise solely under Ohio law. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v.*

*Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. 2018)(Thapar, J., concurring). A federal habeas court may not re-evaluate a state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*).

Norfleet's Fourth Ground for Relief does not state a claim arising under the Federal Constitution. On that basis it should be dismissed.

**Ground Five: Ineffective Assistance of Counsel at Trial and on Appeal**

In his Fifth Ground for Relief Norfleet claims he received ineffective assistance of trial counsel and ineffective assistance of appellate counsel in several respects; the same attorney represented him at both stages of the case.

Under Ohio law, ineffective assistance of trial counsel claims which are apparent on the appellate record must be raised on direct appeal. However, when the same attorney represents a defendant at both stages, a defendant can raise such claims later in a petition for post-conviction relief under Ohio Revised Code § 2953.21. Norfleet has never filed such a petition and has therefore procedurally defaulted his ineffective assistance of trial counsel claims.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "[A]bsent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman,* 501 U.S., at 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule, the statute of limitations on petitions for post-conviction relief, which expires one year from the date the appellate record is complete. That time is long since passed here and there is no doubt the Ohio courts would enforce the statute against Norfleet if he attempted now to file a petition under Ohio Revised Code § 2953.21. The State has a strong interest in finality in criminal cases and the statute of limitations is therefore an adequate state procedural, completely independent of federal law. Therefore, Norfleet's claims of

15

ineffective assistance of trial counsel are procedurally defaulted.

Norfleet did raise his claims of ineffective assistance of appellate counsel by the appropriate vehicle, an application to reopen under Ohio R. App. P. 26(B). However, he also procedurally defaulted those claims by not timely appealing to the Ohio Supreme Court. That court's forty-five day time limit on appeals has been repeatedly upheld by the Sixth Circuit as an adequate and independent state procedural rule. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).

Therefore, Norfleet's Fifth Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

April 17, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).